IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

MAY 14 2008

JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

JOHN PROCTOR,
            *Plaintiff,*

v.

LORI GREEN,

CINDY CASEY,

JOHN FREEMAN,

KATHY RALSTON,

VIOLA VAUGHN-EDEN,
            *Defendants.*

Case No. 3:07CV00045

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court on Rule 12(b)(6) Motions to Dismiss filed by Defendants Lori Green, Cindy Casey, John Freeman, Kathy Ralston, and Viola Vaughn-Eden (docket #11, #12, #13, #14, and #28). Because the Amended Complaint fails to state a viable substantive due process claim under 42 U.S.C. § 1983 or § 1985, and because I decline to exercise supplemental jurisdiction over the remaining state tort claims, I will grant the motions in an Order to follow.

### I. BACKGROUND[1]

In this civil rights case, Plaintiff John Proctor[2] asserts federal civil rights and state law claims against the defendants in both their official and individual capacities. These claims arise out of a two-year investigation of Proctor on allegations of child sexual abuse that were

---

[1] Except where otherwise noted, the facts recited here are derived from Plaintiff's First Amended Complaint. As required in the analysis of dismissal motions, these facts are assumed to be true for purposes of the motions. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

[2] Pursuant to this Court's September 4, 2007 Order, all public documents filed in this action employ the pseudonyms "John Proctor," "Jane Proctor," and "Janet Roe" when referring to Plaintiff, Plaintiff's child, and the child's mother, respectively.

ultimately determined to be unfounded. The alleged victim was Proctor's then-four-year-old daughter, Jane Proctor. Defendant Viola Vaughn-Eden is a licensed clinical social worker in private practice in Newport News, Virginia who undertook an extended forensic evaluation of Jane. The other defendants are employees of the Albemarle County Department of Social Services (ACDSS), which is a local agency of the Virginia Department of Social Services (VDSS). Defendant Lori Green is a caseworker for ACDSS's Child Protective Services. She led the investigation of Proctor and, in conjunction with one or more of the other defendants, hired Vaughn-Eden to conduct the forensic evaluation of Jane. Defendant Cindy Casey is Green's direct supervisor. Defendant John Freeman is the Assistant Director of ACDSS and acted as the Local Hearing Officer for Proctor's first administrative appeal of ACDSS's determination that he had abused Jane. Defendant Kathy Ralston is the Director of ACDSS.

According to the Amended Complaint, the allegations of sexual abuse investigated by the defendants were first made by Janet Roe, Jane's mother, in the midst of a bitter custody dispute. In 2004, prior to the defendants' involvement, Roe's allegations were litigated as part of that custody dispute in the Juvenile and Domestic Relations (JDR) Court for Spotsylvania County, Virginia. The result of that litigation was that Proctor, who until that time had shared custody, was awarded sole legal and physical custody of Jane, with Roe receiving only five days of visitation per month. Thus, it would appear that the JDR Court found Roe's allegations of abuse to be unfounded. Roe appealed the custody decision to the Spotsylvania County Circuit Court.

While the appeal was pending, Roe videotaped Jane taking a bath during a February 2005 visit. While Roe was taping, Jane "made splashing motions towards her private area and stated 'John does that,' utilizing [Proctor's] first name, contrary to the Child's practice since first learning to speak of referring to [Proctor] as 'Daddy.'" (Am. Compl. ¶ 17.) In June 2005,

- 2 -

Case 3:07-cv-00045-NKM-BWC   Document 37   Filed 05/14/08   Page 2 of 13   Pageid#: 144

approximately two weeks prior to the commencement of Roe's appeal of the custody decision in the Circuit Court, the defendants began an investigation of Proctor, citing Roe's videotape.[3] Proctor informed them of the 2004 custody litigation involving substantially similar allegations, as well as other facts tending to show that Jane's claim was false, but the defendants dismissed the JDR Court's findings out of hand and failed to follow up on any of the other exculpatory facts Proctor raised. Instead, the defendants summarily removed Jane from Proctor's custody and placed her in foster care.

As required by § 63.2-1517 of the Virginia Code, a hearing was held in the JDR Court within 72 hours of the removal. Because "there was not sufficient evidence presented that the child would be subject to an imminent threat of life or health to the extent that severe or irremediable injury would be likely to result if the child were returned to or left in the custody of her Father pending a final hearing," the JDR Court ordered that Jane be returned to Proctor's custody. (Answer, Ex. 2 at ¶ 16.) The court also stated, however, that ACDSS could continue its investigation and ordered both parents to cooperate. (*Id.* at ¶ 10.) The defendants did continue their investigation, and in August 2005, ACDSS officially concluded that the allegations of "Sexual Abuse, Level 1" against Proctor were "Founded."[4]

Several days later, Green and Vaughn-Eden testified on behalf of Roe in her Circuit Court appeal of the JDR Court's custody decision. Roe then asked the Circuit Court to award her temporary custody of Jane in light of the ACDSS finding that the allegations against Proctor were founded. The Circuit Court denied the request, leaving Jane in the custody of Proctor. The

---

[3] Proctor contends that the timing of the investigation was a purposeful effort by the defendants to prejudice his position in the Circuit Court proceeding.

[4] According to the Amended Complaint, this determination was based almost entirely on Vaughn-Eden's findings from her forensic evaluation of Jane. Proctor asserts that Vaughn-Eden is biased and unqualified, and that her evaluation of Jane was incompetent. He further claims that the defendants were aware of Vaughn-Eden's failings but nevertheless ignored his requests for an unbiased psychologist trained in evaluating allegedly abused children "because they wanted a 'professional license for hire' to substantiate the desired result they were seeking against [him]." (Am. Compl. ¶ 25.)

following day, Green called Proctor at his home and "informed him that if he did not surrender the Child to ACDSS or place a person approved by ACDSS into his home to supervise all of his interactions with his Child, ACDSS would again summarily remove the Child from his custody." (Am. Compl. ¶ 29.) Proctor refused and "was forced to leave his home with his daughter for several days until word arrived that ACDSS had decided not to proceed with a second removal." (*Id.*) In March 2007, the Circuit Court announced its decision in the custody appeal, awarding Proctor sole legal and physical custody of Jane.

Meanwhile, Proctor had pursued an administrative appeal of ACDSS's "Founded" disposition. In January 2006, Defendant Freeman, acting as the Local Hearing Officer, had upheld the disposition. On further appeal, however, a VDSS Administrative Hearing Officer (AHO) determined in June 2007 that ACDSS was barred from pursuing its "Founded" disposition by the doctrine of collateral estoppel and therefore amended the disposition to "Unfounded."[5] (Answer, Ex. 4 at 5.)

Proctor filed the instant lawsuit on August 31, 2007, seeking redress under 42 U.S.C. § 1983 and § 1985 for the defendants' alleged violated of his Fourteenth Amendment liberty interest in his parental and familial relationship with his child. He also asserts Virginia state law claims against all of the defendants for malicious prosecution and against Vaughn-Eden for malpractice. Each of the defendants has filed a Rule 12(b)(6) Motion to Dismiss, and oral arguments were heard on March 17, 2008.

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

---

[5] It appears that the AHO decided that ACDSS was collaterally estopped by the June 2005 removal hearing and resulting order of the JDR Court returning Jane to Proctor's custody. (*See* Answer, Ex. 4 at 3–5.)

- 4 -

Case 3:07-cv-00045-NKM-BWC   Document 37   Filed 05/14/08   Page 4 of 13   Pageid#: 146

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (alteration in original omitted) (citations omitted) (internal quotation marks omitted). Instead, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"; plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Id.* at 1974. As the Fourth Circuit has held, a plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006).

### III. DISCUSSION

Although Counts I, II, and IV of the Amended Complaint allege injuries to both Proctor and his daughter, Proctor's daughter is not a party to this action. Accordingly, to the extent that Proctor's claims seek relief for his daughter's injuries, those claims will be dismissed. As to Proctor's own injuries, I will address each of his claims in turn.

## A. The § 1983 Claim

Count I of the Amended Complaint, Proctor's claim under 42 U.S.C. § 1983, is somewhat vague. It describes numerous facts which, if true, suggest that the defendants may have acted unreasonably, or perhaps even recklessly and unethically, in their investigation of Proctor. The Amended Complaint remains distinctly non-specific, however, in stating the deprivation of a constitutional right that must underlie Proctor's claim if it is to survive. *See* 42 U.S.C. § 1983 (imposing civil liability for "the deprivation of any rights, privileges, or immunities secured by the Constitution"). Proctor does not identify any particular act of the defendants that was itself a violation of a constitutional right; rather, he claims only that he was deprived of a Fourteenth Amendment substantive due process right "in his parental and familial relationship with his child" caused by the defendants' "prolonged pattern of intentional, arbitrary, egregious, and grossly negligent official conduct." (Compl. ¶ 50.)

With respect to this claim, the defendants' largely identical motions to dismiss rely almost entirely on *Vosburg v. Department of Social Services*, 884 F.2d 133 (4th Cir. 1989), which recognized that social workers are entitled to absolute immunity for "those activities . . . that could be deemed prosecutorial." *Id.* at 138. The court in *Vosburg* made clear, however, that absolute immunity does not apply to those functions of social workers that are investigatory or otherwise non-prosecutorial. *Id.* The distinction between prosecutorial functions and non-prosecutorial functions is by no means a bright line, and the defendants' filings do little to clarify its application in this case.[6] Although "[t]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question," *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993), the defendants offer little more than conclusory assertions of

---

[6] Notably, the defendants' motions, which were unaccompanied by supporting memoranda, and their replies to Proctor's responses are each less than two-and-a-half pages long, including the caption and certificate of service.

- 6 -

immunity and do not even attempt to apply to the facts alleged any of the abundant case law on the issue of absolute immunity for social workers. Moreover, the defendants do not make the alternative argument that, even if they are not entitled to absolute immunity, they are nonetheless entitled to qualified immunity.[7] *See, e.g., Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 398 (4th Cir. 1990).

Before determining whether a defendant is entitled to immunity for his or her actions, however, it is appropriate to determine "whether the defendant's conduct violated a constitutional right of the plaintiff. . . . Only if the defendant did act illegally must the case proceed to the second level to determine whether he is, nevertheless, immune from suit." *Pittman v. Nelms*, 87 F.3d 116, 119 (4th Cir. 1996). The Fourteenth Amendment provides in relevant part that "[n]o state shall . . . deprive any person of life liberty or property without due process of law." U.S. Const. amend. XIV. "The substantive component of the Due Process Clause 'bar[s] certain government actions regardless of the fairness of the procedures used to implement them.'" *Weller*, 901 F.2d at 391. Thus, "[t]he touchstone of due process is the protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Generally, an act must "shock the conscience" in order to constitute a violation of substantive due process. *See Weller*, 901 F.2d at 391; *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999).

The Supreme Court has long recognized that parents have a liberty interest in familial relations as a component of substantive due process. *See Meyer v. Nebraska*, 262 U.S. 390, 399

---

[7] To the extent that this reflects the defendants' confidence in their absolute immunity argument, that confidence may well be misplaced. Although I need not decide the question of absolute immunity because I will decide the motions on other grounds, it strikes me that at least some of the defendants' actions, such as Defendant Green's testimony in an affidavit supporting the June 2005 petition for removal, cannot properly be classified as prosecutorial. *Cf. Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997) (holding that a prosecutor is not entitled to absolute immunity for testifying about facts showing probable cause in an affidavit in support a motion for an arrest warrant because "the only function that she performs in giving sworn testimony is that of a witness"). Moreover, I question whether the defendants have satisfied their burden under *Buckley*, 509 U.S. at 269.

(1923); *see also Brokaw v. Mercer County*, 235 F.3d 1000, 1018 (7th Cir. 2000) (citing cases). Often referred to as a right to "familial privacy," it is defined as parents' fundamental liberty interest in the care, custody, and control of their children. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). This interest, however, is not absolute; it "is limited by the compelling government interest in the protection of children—particularly where the children need to be protected from their own parents."[8] *Croft v. Westmoreland County Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997).

As the Fourth Circuit explained in *Hodge v. Jones*, 31 F.3d 157 (4th Cir. 1994), "[t]he concept of familial privacy has been restricted by the Supreme Court to (1) thwarting governmental attempts to interfere with particularly intimate family decisions, and (2) voiding government actions that sever, alter, or otherwise affect the parent/child relationship." *Id.* at 163 (citations omitted). It is this second aspect of familial privacy that is most relevant to the analysis presented here.[9] The Supreme Court cases relied on by the court in *Hodge* suggest that this aspect of the liberty interest in familial relations applies to situations where government action affects the very *existence* of the parent/child relationship, or in other words, where the government action deprives a parent of the care, custody, or control of his or her child. *See id.* at 163 & n.7 (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (termination of parental rights); *Little v. Streater*, 452 U.S. 1, 13 (1981) (determining paternity); *Stanley v. Illinois*, 405 U.S. 645, 651–52 (1972) (unwed father's fundamental right in care and custody of children)). The

---

[8] Furthermore, the precise confines of the right to familial privacy are nebulous. *See Hodge v. Jones*, 31 F.3d 157, 164 (4th Cir. 1994) ("There is little, if any, clear guidance in the relevant caselaw that would permit us to chart with certainty the amorphous boundaries between the Scylla of familial privacy and the Charybdis of legitimate government interests.").

[9] The first aspect, i.e., the protection of "intimate family decisions," deals with things such as family living arrangements, maternity leave, abortion, birth control, and children's education. *See Hodge*, 31 F.3d at 163 & n.6 (citing *Moore v. City of East Cleveland*, 431 U.S. 494, 499–500 (1977); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639–40 (1974); *Roe v. Wade*, 410 U.S. 113, 154 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925)).

decisions of other Courts of Appeals are in accord with this view of the right to familial privacy. *See, e.g., Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 590–91 (6th Cir. 2008); *Watterson v. Page*, 987 F.2d 1, 8–9 (1st Cir. 1993); *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir.1977). Moreover, the Fourth Circuit cases addressing the right since *Hodge* appear to have all arisen in situations where there was a deprivation of care, custody, or control. *See, e.g., Martin v. Saint Mary's Dept. Soc. Servs.*, 346 F.3d 502, 504 (4th Cir. 2003); *Renn ex rel. Renn v. Garrison*, 100 F.3d 344, 347 (4th Cir. 1996).

Viewed in this light, it becomes apparent that the only alleged action of the defendants that might constitute a violation of Proctor's right to familial privacy is the temporary removal of Jane from his custody in June 2005. To create liability under § 1983, however, the removal must have been "so ill-conceived or malicious that it 'shocks the conscience.'" *Miller*, 174 F.3d at 375 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Although there are undoubtedly situations in which a caseworker is justified in taking emergency custody of a child, even where later investigation proves no abuse occurred, "a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused, or is in imminent danger of abuse." *Croft*, 103 F.3d at 1126. Thus, "at an irreducible minimum, a case worker must have no less than a reasonable suspicion of child abuse (or imminent danger of abuse) before taking a child into custody prior to a hearing." *Hatch v. Dep't for Children, Youth and Their Families*, 274 F.3d 12, 23–24 (1st Cir. 2001) (citations omitted).

In this case, the allegations of the Amended Complaint make clear that the defendants did have sufficient evidence for a "reasonable suspicion" that Proctor had abused his daughter,

namely Jane's videotaped accusation.[10] In the Fourth Amendment context, this alone would not only provide the requisite "particularized and objective basis" for a reasonable suspicion, *Ornelas v. U.S.*, 517 U.S. 690, 696 (1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)), but might well also satisfy the higher standard of probable cause, *see, e.g., Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir.1991) (finding that "an identification by name of assailants provided by a victim" is sufficient probable cause); *United States v. Beckham*, 325 F. Supp. 2d 678, 687 (E.D. Va. 2004) (citing numerous cases for "the principle that a finding of probable cause may be based on information provided by a victim or eyewitness to a crime"). Although Proctor argues that the defendants ignored or failed to follow up on a variety of exculpatory evidence, the Fourth Circuit has stated simply and explicitly that "[i]t does not shock the conscience to hear that defendants removed a child in emergency action from the custody of a parent suspected of abusing [her], *based upon some evidence of child abuse*." *Weller*, 901 F.2d at 391 (emphasis added). Because the defendants had "some evidence" that Proctor had abused Jane, her brief removal from his custody in June 2005 does not shock the conscience and therefore cannot give rise to liability under § 1983.

Apart from the actual removal, perhaps the most troubling of Proctor's allegations is that even after two separate judicial proceedings in which the defendants' evidence of sexual abuse was heard and determined to be insufficient to remove Jane from Proctor's custody, Defendant Green threatened to again summarily remove Jane unless Proctor voluntarily surrendered her to ACDSS or allowed a social worker into his home to provide constant supervision. Had Proctor capitulated or had Green made good her threat, such action might well "shock the conscience" and therefore constitute a violation of substantive due process. *See Croft*, 103 F.3d at 1124–25

---

[10] In addition, the June 2005 decision of the JDR Court suggests that Jane repeated her allegations of sexual abuse to ACDSS in person on June 24, 2005. (Answer, Ex. 2 at ¶ 11; *see also* Answer, Ex. 3 at Green Aff. ¶ 4.)

- 10 -

Case 3:07-cv-00045-NKM-BWC    Document 37    Filed 05/14/08    Page 10 of 13    Pageid#: 152

& n.1. However, Proctor did not capitulate, Green did not make good her threat, and Jane remained in Proctor's custody. Thus, like all of Proctor's remaining allegations, this allegation constitutes, at most, an *attempted* deprivation of his care, custody, or control of Jane.

Consistent with the plain language of § 1983, which conditions liability on "the deprivation of any rights, privileges, or immunities," an attempted deprivation of a constitutional right does not give rise to a claim under § 1983. *See, e.g., Jenkins*, 513 F.3d at 590–91; *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992); *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989); *Andree v. Ashland County*, 818 F.2d 1306, 1311 (7th Cir. 1987); *Dooley v. Reiss*, 736 F.2d 1392, 1394–95 (9th Cir. 1984). In the circumstances of this case, the Sixth Circuit's reasoning in *Jenkins* is particularly instructive:

> [The] actions against Plaintiffs did not violate their fundamental rights. Mulkey was subjected to an interview and Jenkins was subject to an investigation and court complaint. But neither was deprived of her child. Neither lost care, custody, or control of her child nor the right to raise her child. At most, they were victims of something resembling malicious prosecution or defamation, neither of which are cognizable as constitutional violations of privacy. There are cases in other circuits finding that parents who lost custody of their children because of malicious, false reports suffered constitutional violations. Here, however, there was no separation.

*Jenkins*, 513 F.3d at 590–91 (citations omitted). To be sure, Proctor's allegations suggest that he was subjected to more than a mere "investigation and court complaint," but rather a concerted effort to deprive him of his care, custody, and control of Jane. The ultimate outcome of that effort, however, was no different than in *Jenkins*: Proctor was not deprived of his child (except for the June 2005 removal, which does not shock the conscience for reasons already discussed).

In sum, the Amended Complaint alleges actions by the defendants that may well have caused Proctor to incur substantial pain and expense, and that could perhaps give rise to liability under some other cause of action. It does not, however, allege a violation of a constitutional

- 11 -

right. Accordingly, the Amended Complaint fails to state a claim under § 1983, and Count I must therefore be dismissed.[11]

### B. The § 1985 Claim

In Count II of his Amended Complaint, Proctor alleges a conspiracy claim against all defendants under 42 U.S.C. § 1985. Although Proctor fails to specify the subsection of § 1985 on which he relies, it is clear that only § 1985(3) has any possible relevance to this case.[12] To state a claim under § 1985(3), there must be "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The Amended Complaint is devoid of any allegations of class-based discriminatory animus; therefore Count II must be dismissed.

### C. The State Tort Claims

Count III of the Amended Complaint is a claim against all defendants for malicious prosecution, and Count IV is a claim against Vaughn-Eden for malpractice. For the reasons set forth above, however, I will dismiss the claims over which this Court has original jurisdiction, and pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over Proctor's state tort claims. Accordingly, I will dismiss Counts III and IV as well.

## IV. CONCLUSION

Although I will dismiss Proctor's claims, this is not to say that he has suffered no injury or is undeserving of sympathy. I have little doubt that even a perfect investigation is highly

---

[11] Because I will dismiss Proctor's § 1983 claim on this basis, I need not decide the other potential bases for dismissal raised by the defendants, including absolute immunity.

[12] Section 1985(3) addresses conspiracies to deprive persons of rights or privileges, whereas § 1985(1) and § 1985(2) relate respectively to conspiracies to prevent an officer from performing his duties and conspiracies to obstruct justice. No facts alleged in the Amended complaint concern these latter two areas.

- 12 -

intrusive, upsetting, and painful to one who is the victim of unfounded accusations of sexually abusing his own child. Nevertheless, the mere existence of a governmental intrusion, even one that is particularly egregious, does not automatically give rise to a claim for relief under federal law. Because the facts alleged in the Amended Complaint fail to state a viable substantive due process claim under 42 U.S.C. § 1983 or § 1985, and because I decline to exercise supplemental jurisdiction over the remaining state tort claims, I will grant the defendants' Motions to Dismiss in an Order to follow.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this 14th day of May, 2008.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE