CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUL 30 2008
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN PROCTOR,<br>          *Plaintiff,*<br>v.<br>LORI GREEN,<br>CINDY CASEY,<br>JOHN FREEMAN,<br>KATHY RALSTON,<br>VIOLA VAUGHN-EDEN,<br>          *Defendants.* | Case No. 3:07cv00045<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on two Motions for Leave to Amend filed by Plaintiff John Proctor (docket #39 and #44). These motions follow the dismissal of Proctor's First Amended Complaint for failure to state a claim upon which relief can be granted. Although the allegations of his proposed amended complaints are quite troubling, I must conclude that the proposed amendments would be futile for the reasons set forth below. Accordingly, I will deny the Motions for Leave to Amend in an accompanying Order.

**I. BACKGROUND**[1]

In this civil rights case, Plaintiff John Proctor[2] ("Proctor") asserts federal civil rights and state law claims against the Defendants in both their official and individual capacities. These

---

[1] Except where otherwise noted, the alleged facts are derived from the First Amended Complaint and are recited here in the light most favorable to Proctor.

[2] Pursuant to this Court's September 4, 2007 Order, all public documents filed in this action employ the pseudonyms "John Proctor," "Jane Proctor," and "Janet Roe" when referring to the plaintiff, the plaintiff's child, and the child's mother, respectively.

claims arise out of a two-year investigation of Proctor on allegations of child sexual abuse that were ultimately determined to be unfounded. The alleged victim was Proctor's then-four-year-old daughter, Jane.

Defendant Viola Vaughn-Eden is a licensed clinical social worker in private practice in Newport News, Virginia who undertook an extended forensic evaluation of Jane. The other Defendants are employees of the Albemarle County Department of Social Services (ACDSS), which is a local agency of the Virginia Department of Social Services (VDSS). Defendant Lori Green is a caseworker for ACDSS' Child Protective Services. She led the investigation of Proctor and, in conjunction with one or more of the other Defendants, hired Vaughn-Eden to conduct the forensic evaluation of Jane. Defendant Cindy Casey is Green's direct supervisor. Defendant John Freeman is the Assistant Director of ACDSS and acted as the Local Hearing Officer for Proctor's first administrative appeal of ACDSS' determination that he had abused Jane. Defendant Kathy Ralston is the Director of ACDSS.

According to Proctor, the allegations of sexual abuse were first made by Janet Roe, Jane's mother, in the midst of a bitter custody dispute. In 2004, prior to the Defendants' involvement, Roe's allegations were litigated as part of that custody dispute in the Juvenile and Domestic Relations (JDR) Court for Spotsylvania County, Virginia. The result of that litigation was that Proctor, who until that time had shared custody, was awarded sole legal and physical custody of Jane, with Roe receiving only five days of visitation per month. Thus, it would appear that the JDR Court found Roe's allegations of abuse to be unfounded. Roe appealed the custody decision to the Spotsylvania County Circuit Court.

While the appeal was pending, Roe videotaped Jane taking a bath during a February 2005 visit. While Roe was taping, Jane "made splashing motions towards her private area and stated

'John does that,' utilizing [Proctor's] first name, contrary to the Child's practice since first learning to speak of referring to [Proctor] as 'Daddy.'" (1st Am. Compl. ¶ 17.)[3] In June 2005, approximately two weeks prior to the commencement of Roe's appeal of the custody decision in the Circuit Court, the Defendants began an investigation of Proctor, citing Roe's videotape.[4] Proctor informed the Defendants of the 2004 custody litigation involving substantially similar allegations, as well as other facts tending to show that the allegation of abuse was false, but the Defendants allegedly dismissed the JDR Court's findings out of hand and failed to follow up on any of the other exculpatory facts Proctor raised. Instead, in late-June 2005, the Defendants summarily removed Jane from Proctor's custody and placed her in foster care.

As required by § 63.2-1517 of the Virginia Code, a hearing was held in the JDR Court within 72 hours of the removal. Because "there was not sufficient evidence presented that the child would be subject to an imminent threat of life or health to the extent that severe or irremediable injury would be likely to result if the child were returned to or left in the custody of her Father pending a final hearing," the JDR Court ordered that Jane be returned to Proctor's custody. (Answer, Ex. 2 at ¶ 16.) The court also stated, however, that ACDSS could continue its investigation and ordered both parents to cooperate. (*Id.* at ¶ 10.) The Defendants did continue their investigation, and in August 2005, ACDSS officially concluded that the allegations of "Sexual Abuse, Level 1" against Proctor were "Founded."[5]

---

[3] Proctor's proposed amended complaints state that the videotape depicts the child making splashing motions only toward her abdomen, and that it "does not show the Child acting out a single abusive act." (2d Am. Compl. ¶ 20.) This attempted re-characterization of the content of the videotape is one basis of the Defendants' opposition to Proctor's motions and is discussed in greater detail elsewhere in this opinion.

[4] Proctor contends that the timing of the investigation was a purposeful effort by the Defendants to prejudice his position in the Circuit Court proceeding.

[5] According to the First Amended Complaint, this determination was based almost entirely on Vaughn-Eden's findings from her forensic evaluation of Jane. Proctor asserts that Vaughn-Eden is biased and unqualified, and that her evaluation of Jane was incompetent. He further claims that the Defendants were aware of Vaughn-Eden's failings but nevertheless ignored his requests for an unbiased psychologist trained in evaluating allegedly abused

Several days later, Green and Vaughn-Eden testified on behalf of Roe in her Circuit Court appeal of the JDR Court's custody decision. Roe then asked the Circuit Court to award her temporary custody of Jane in light of the ACDSS finding that the allegations against Proctor were founded. The Circuit Court denied the request, leaving Jane in the custody of Proctor. The following day, Green called Proctor at his home and "informed him that if he did not surrender the Child to ACDSS or place a person approved by ACDSS into his home to supervise all of his interactions with his Child, ACDSS would again summarily remove the Child from his custody." (1st Am. Compl. ¶ 29.) Proctor refused and "was forced to leave his home with his daughter for several days until word arrived that ACDSS had decided not to proceed with a second removal." (*Id.*) In March 2007, the Circuit Court announced its decision in the custody appeal, awarding Proctor sole legal and physical custody of Jane.

Meanwhile, Proctor had pursued an administrative appeal of ACDSS' "Founded" disposition. In January 2006, Defendant Freeman, acting as the Local Hearing Officer, had upheld the disposition. On further appeal, however, a VDSS Administrative Hearing Officer (AHO) determined in June 2007 that ACDSS was barred from pursuing its "Founded" disposition by the doctrine of collateral estoppel and therefore amended the disposition to "Unfounded."[6] (Answer, Ex. 4 at 5.)

Proctor filed the instant lawsuit on August 31, 2007, seeking redress under 42 U.S.C. § 1983 and § 1985 for the Defendants' alleged violated of his Fourteenth Amendment liberty interest in his parental and familial relationship with his child. He also asserts Virginia state law claims against all of the Defendants for malicious prosecution and against Vaughn-Eden for

---

children "because they wanted a 'professional license for hire' to substantiate the desired result they were seeking against [him]." (1st Am. Compl. ¶ 25.)

[6] It appears that the AHO decided that ACDSS was collaterally estopped by the June 2005 removal hearing and resulting order of the JDR Court returning Jane to Proctor's custody. (*See* Answer, Ex. 4 at 3–5.)

malpractice. On May 14, 2008, I dismissed Proctor's First Amended Complaint without prejudice pursuant to Rule 12(b)(6) because it failed to state a viable substantive due process claim under 42 U.S.C. § 1983 or § 1985, and because I declined to exercise supplemental jurisdiction over the remaining state tort claims.

On May 27, 2008, Proctor filed a Motion for Leave to Amend Complaint. On June 6, 2008, I took the Motion for Leave to Amend under advisement and ordered Proctor to file his proposed amended complaint. Proctor did so, filing a proposed Second Amended Complaint on June 16, 2008. Nine days later, Proctor filed a second Motion for Leave to Amend and a proposed Third Amended Complaint. The Defendants filed briefs in opposition to both motions, but none of the parties has requested a hearing. Accordingly, the Motions for Leave to Amend are now ripe for decision.

## II. STANDARD OF REVIEW

Under Rule 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed R. Civ. P. 15(a)(2). However, "[i]f the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." 6 Charles Alan Wright et al., *Federal Practice and Procedure: Civil* § 1487 (3d ed. 1998) (citations omitted). Thus, "if a complaint as amended could not withstand a motion to dismiss, then the amendment should be denied as futile." *Id.* (citations omitted); *see also Perkins v. U.S.*, 55 F.3d 910, 917 (4th Cir. 1995). Accordingly, in determining whether the proposed amendments would be futile, a court should accept the proposed amendments as true and must draw all reasonable inferences in favor of the plaintiff. *Cf. Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001).

## III. DISCUSSION

Although the Defendants have also responded to Proctor's Motions for Leave to Amend on their merits, they first argue that the motions should be dismissed because they were not filed with supporting briefs containing legal argument. Although the Defendants are correct that supporting briefs are required by the Pretrial Order, their argument rings somewhat hollow given their own previous failure to provide briefs in support of their Motions to Dismiss. (*See* Mem. Op. 6 n.6, May 14, 2008.) Despite that technical violation of the Pretrial Order, I not only considered the Defendants Motions to Dismiss on their merits, but also granted them. Given the importance of the constitutional rights at issue in this case, I will grant Proctor the same latitude I have previously granted the Defendants and decline to dismiss his motions based on their lack of supporting briefs.[7]

### A. Proposed Third Amended Complaint

Proctor's proposed Third Amended Complaint materially varies from his proposed Second Amended Complaint only in attempting to state a § 1983 procedural due process claim arising out of an "Administrative Summons" he received on June 21, 2008. (*See* 3d Am. Compl. ¶¶ 67, 80–85.) This summons directed Proctor to attend a hearing regarding a petition brought by ACDSS for an administrative order of child support against him. However, Proctor only received the summons two days *after* the hearing had already occurred. Proctor claims that there is no legal basis for ADCSS' petition, and that ACDSS purposefully ensured that the summons was delivered after the hearing so that the threatened order would be entered against him by default.

---

[7] However, now that the parties have all been once excused from complying with the briefing requirements, I would caution them that any future noncompliance is unlikely to be met with such leniency.

If the proposed amendments accurately describe ACDSS' motivations, Proctor's allegations are indeed troubling. They do not, however, state a procedural due process claim because there is no allegation that the state does not provide an adequate post-deprivation remedy. *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Wilkins v. Whitaker*, 714 F.2d 4, 6 (4th Cir. 1983). Moreover, the proposed Third Amended Complaint does not clearly allege a deprivation of liberty or property at all; rather, it states only that Proctor "has apparently been subject to an improper default finding affecting his property." (3d Am. Compl. ¶ 85.) Thus, the proposed amendments fail to state an independent cause of action. Furthermore, although the alleged facts could perhaps be relevant evidence at a trial on Proctor's other claims, they do not serve to establish any essential element of those other claims and are therefore superfluous under the federal notice-pleading regime. *See, e.g.*, Fed. R. Civ. P. 8(a)(2) (stating that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006) (stating that a complaint "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist."). Accordingly, the proposed amendments would be futile, and I will therefore deny Proctor's second Motion for Leave to Amend.

### B. Proposed Second Amended Complaint

Proctor's proposed Second Amended Complaint alleges five causes of action. Count I alleges a substantive due process claim under 42 U.S.C. § 1983, Count II alleges a procedural due process claim under 42 U.S.C. § 1983, and Count III alleges a civil conspiracy claim under 42 U.S.C. § 1985. Counts IV and V allege state tort claims of malicious prosecution and malpractice, respectively. I will address each of these causes of action in turn.

## 1. Substantive Due Process Under § 1983

Like his First Amended Complaint, Proctor's proposed Second Amended Complaint alleges a violation of his substantive due process right to familial privacy. This right is premised on parents' fundamental liberty interest in the care, custody, and control of their children. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). As I have previously explained, the only action alleged in Proctor's First Amended Complaint that might have constituted a violation of Proctor's right to familial privacy was the temporary removal of Jane from his custody in late-June 2005. (Mem. Op. 8–9, May 14, 2008.) However, such a removal violates that right only if the state actors effecting the removal lacked a reasonable suspicion of child abuse. *See Hatch v. Dep't for Children, Youth and Their Families*, 274 F.3d 12, 23–24 (1st Cir. 2001); *Croft v. Westmoreland County Children & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997). Accordingly, I dismissed Proctor's claim because the allegations of the First Amended Complaint established that the Defendants did have sufficient evidence for a reasonable suspicion that he had abused his daughter, namely Jane's videotaped accusation. (Mem. Op. 9–10, May 14, 2008.)

In the proposed Second Amended Complaint, the June 2005 removal remains the only alleged action capable of violating Proctor's right to familial privacy. However, assuming, as I must, that the allegations of the proposed Second Amended Complaint are true, they are likely sufficient to establish that the Defendants did not have a reasonable suspicion of abuse. Among the proposed amendments are allegations that (1) the investigation into the allegation that Proctor had abused of his child was initially assigned to the Spotsylvania County DSS; (2) due to a conflict of interest, the Spotsylvania County DSS properly assigned the investigation to the Louisa County DSS in accordance with Virginia law; (3) Jane's mother provided the February

2005 videotape of Jane taking a bath to the Louisa County DSS; and (4) the Louisa County DSS made a prosecutorial decision to take no action because the videotape did not warrant further investigation. The proposed amended complaint further alleges that despite the decision of the Louisa County DSS, the mother and the Defendants then conspired to have the case reassigned to the Albemarle County DSS in contravention of Virginia regulatory and statutory procedures. This was allegedly done for the express purpose of securing the removal of the child from Proctor's custody in order to assist the mother in her ongoing custody dispute with Proctor. The Defendants' alleged knowledge that the lawfully assigned investigating agency had already made a determination that the abuse claim was unfounded tends to cast doubt on the reasonableness of the Defendants' suspicion of abuse.

Furthermore, the proposed amended complaint contains modified and more detailed allegations concerning the content of the videotape. In his First Amended Complaint, Proctor appeared to concede that Jane's videotaped actions and statements, standing alone, constituted an allegation of sexual abuse. Now, however, he describes the content of the videotape as follows:

> [T]he videotape created and directed by Mother does not show the Child acting out a single abusive act. The videotape depicts only the Child splashing water towards herself as she sat in a bath. The area sown I [sic] the videotape towards which the water was directed by the Child's splashing movements was the Child's abdomen. Mother proclaimed that the Child's motions be interpreted as the Child acting out abuse to her private area although no such thing was actually depicted in the videotape.

(2d Am. Compl. ¶ 20.)

The Defendants object to this re-characterization of the content of the videotape. They argue that the factual allegation in the First Amended Complaint that Jane "made splashing motions towards her private area and stated 'John does that,'" is an admission as to the content of the videotape that cannot now be retracted. (*See* Defs.' Br. Opp'n 4 (quoting 1st Am. Compl. ¶

- 9 -

Case 3:07-cv-00045-NKM-BWC Document 49 Filed 07/30/08 Page 9 of 14 Pageid#: 267

17).) In support of their argument, the Defendants have filed a copy of the videotape in question. (*See id.*, Ex. 5.) They claim that "[t]he 'videotape quite clearly contradicts the version' Plaintiff now seeks to allege." (*Id.* at 4 (quoting *Scott v. Harris*, 127 S. Ct. 1769, 1775 (2007).)

Having now reviewed the videotape several times, I am forced to conclude that the Defendants' confidence in it is misplaced. Although I could not state definitively, as does Proctor, that the videotape does not show Jane acting out an abusive act, I am equally unconvinced that it does show abuse. Indeed, it strikes me that the videotape is, at best, completely ambiguous—although Jane's actions and statements in the video *could* refer to abusive acts, they could just as easily refer to something wholly innocuous. Thus, the description of the video in paragraphs 19 and 20 of the proposed Second Amended Complaint appears to be more accurate than that set forth in the First Amended Complaint. Given the ambiguity of the videotape and the Defendants' alleged knowledge that the Louisa County DSS had already determined that the abuse claim was unfounded, it is likely that the proposed Second Amended Complaint sufficiently alleges that the Defendants lacked the reasonable suspicion of abuse necessary to justify the June 2005 removal.[8]

Nevertheless, Proctor's proposed amendments would be futile because, even as amended, his substantive due process claim would be barred by the statute of limitations. There is no

---

[8] Admittedly, the Defendants apparently had additional bases for their suspicion that are not alleged in any of the complaints. (*See* Mem. Op. 10 n.10, May 14, 2008.) Nevertheless, it seems clear that the videotape was among the Defendants' key justifications for the June 2005 removal. Moreover, it appears that in relying on the videotape, at least one Defendant overstated its contents. In her affidavit filed in support of ACDSS' petition for an emergency removal order, Defendant Green stated:

> While taking a bath, [Jane's] mother witnessed [Jane] touch her vagina and when her mother asked her what she was doing, Jane replied "[John] does that." When asked by mom to tell her in words what he is doing, [Jane] replied, "I'll show you what he does. He does this." [Jane] was seen fondling her vagina. This disclosure was taped.

(Answer, Ex. 3 at Green Aff. ¶ 3.) What was taped, however, was Jane making ambiguous splashing motions in the water several inches from her vagina. At no point in the video can she be seen to actually touch or fondle her vaginal area. (*See* Defs.' Br. Opp'n, Ex. 5.)

- 10 -

federal statute of limitations for § 1983 claims, so the state limitations period that governs personal injury actions is applied. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). Virginia has a two-year statute of limitations for personal injury claims. Va. Code Ann. § 8.01-243(A). Proctor filed his original Complaint on August 31, 2007. Therefore, any claim under § 1983 that accrued prior to August 31, 2005 is barred by the statute of limitations.

A claim accrues when the affected party knew or should have known of the injury that is the basis of the action. *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1162 (4th Cir. 1991) (citations omitted). Here, the only alleged injury that is cognizable under § 1983 is Jane's temporary removal from Proctor's custody in late-June 2005. Moreover, Proctor's own allegations establish that he knew of Jane's removal on the same date that it occurred. Accordingly, his § 1983 claim accrued in late-June 2005, at which time the two-year statute of limitations began to run. Because Proctor did not file his Complaint until August 31, 2007, approximately two months after the limitations period had expired, his § 1983 claim is barred.

### 2. Procedural Due Process Under § 1983

Count II of Proctor's proposed Second Amended Complaint claims violations of his right to procedural due process. The first such violation is based on the Defendants' alleged violation of Virginia regulatory and statutory procedures in having the child abuse case reassigned from Louisa County DSS to ACDSS. (*See* 2d Am. Compl. ¶ 74–75.) The second violation is based on the Defendants' continued investigation of him for almost a year after they were estopped from doing so by the JDR Court's dismissal of ACDSS' removal petition. (*See id.* ¶ 76.)

As the Fourth Circuit has explained, claims based solely on violations of state law cannot sustain a § 1983 action. *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988). To hold otherwise "would convert every charge of a violation of state law into a due process action." *Id.* (citing

*Gryger v. Burke*, 334 U.S. 728, 731 (1948)). Accordingly, Proctor's proposed amendments relating to Count II would be futile.

### *3. Conspiracy Under § 1985*

Count III of Proctor's proposed Second Amended Complaint alleges simply that the Defendants conspired to commit the violations of his rights alleged in his § 1983 claims. I previously dismissed Proctor's § 1985 civil conspiracy claim because he failed to allege the existence of any class-based discriminatory animus. (*See* Mem. Op. 12, May 14, 2008.) The proposed amendments do nothing to remedy this defect. Accordingly, Proctor's proposed Second Amended Complaint fails to state a civil conspiracy claim under § 1985.

Setting aside Proctor's misplaced reliance on § 1985, however, his allegations could be construed as alleging a civil conspiracy claim under § 1983. In order to state a § 1983 civil conspiracy claim, a plaintiff must allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). Assuming that Proctor has sufficiently alleged that the Defendants lacked the requisite reasonable suspicion for the June 2005 removal, the proposed Second Amended Complaint likely satisfies these requirements.

Nevertheless, like Proctor's substantive due process claim, a civil conspiracy claim under § 1983 would be barred by the two-year statute of limitations. Although the alleged conspiracy appears to have extended at least through August 31, 2005 (*see, e.g.*, 2d Am. Compl. ¶ 54–55), "[i]njury and damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a conspiracy.'" *Kadar Corp. v. Milbury*, 549 F.2d 230, 234 (1st Cir. 1977) (citation omitted). Accordingly, the statute of limitations runs separately from each overt act that

is alleged to cause damage to the plaintiff. *Lawrence v. Acree*, 665 F.2d 1319, 1324 (D.C. Cir. 1981) (per curiam).

Here, the only overt act alleged to have caused an injury cognizable under § 1983 is the June 2005 removal. Given that Proctor was aware of this injury and the identity of the alleged wrongdoers, the limitations period is unaffected by the existence of a continuing conspiracy. As the Second Circuit has explained:

> Characterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as "a single series of interlocking events" does not postpone accrual of claims based on individual wrongful acts. The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action. To permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.

*Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980). Accordingly, even if Proctor's proposed amendments were construed as alleging a civil conspiracy claim under § 1983 instead of § 1985, they would be futile.

### 4. State Tort Claims

Pursuant to 28 U.S.C. § 1367(c)(3), I previously declined to exercise supplemental jurisdiction over Proctor's state tort claims, having dismissed those claims over which this Court has original jurisdiction. (*See* Mem. Op. 12, May 14, 2008.) Therefore, because amendment of Proctor's dismissed federal claims would be futile, amendment of Proctor's dismissed state claims would likewise be futile.

## IV. CONCLUSION

The allegations set forth in the proposed amended complaints are most troubling, and it is therefore with some reluctance that I deny Proctor the opportunity to attempt to prove them. Had he brought this action only a few months earlier, the result might be different. For the reasons set forth above, however, I must deny Proctor's Motions for Leave to Amend.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this ___ day of July, 2008.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE